UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DANIELLE LENZI

                Plaintiff,

    -against-

SYSTEMAX, INC., RICHARD LEEDS, Chairman and
CEO (and in his individual capacity) and
Lawrence P. Reinhold, Executive Vice-President
And Chief Financial Officer (and in his individual
Capacity),

                Defendants.
-----------------------------------------------------------X
FEUERSTEIN, J.

**ORDER**
14-CV-7509 (SJF)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y
★ OCT 26 2015 ★
LONG ISLAND OFFICE

On September 24, 2014, plaintiff Danielle Markou (née Lenzi) Equal Pay Act filed this action alleging federal Equal Pay Act and state equal pay violations. On May 29, 2015, defendant Systemax, Inc. (Systemax), its chief executive officer (CEO), defendant Richard Leeds (Leeds), and its chief financial officer (CFO) Lawrence P. Reinhold (Reinhold) (collectively "defendants") move for dismissal of plaintiff's Equal Pay Act claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] While defendants' dismissal motion was pending, plaintiff filed a second amended complaint, which included Title VII and pregnancy discrimination claims. On September 28, 2015, she filed a separate action, No. 15-cv-5596, which included identical Title VII and pregnancy discrimination claims, but did not include Equal pay Act claims. Defendants move to strike plaintiff's second amended complaint, and plaintiff moves to consolidate both actions. Defendants moved separately on October 7, 2015,

---

[1] Plaintiff captions herself in her second amended complaint, and her complaint in No. 15-cv-5596 as Danielle Markou, her married name.

for an extension of time in which to respond to plaintiff's second amended complaint and to hold a conference in both matters.

For the reasons that follow, defendants' motion to dismiss is denied, plaintiff's consolidation motion is granted, and defendants' motion to strike and for an extension of time are denied as moot.

I. FACTUAL BACKGROUND

For purposes of this motion, the Court accepts as true the following allegations found in the amended complaint. Plaintiff began her employment at Systemax in February 2008, and was promoted to Vice-President of Risk Management in January 2011, becoming the only female member of the executive management team. Pl.'s Compl. 4, ¶¶ 16, 18, 19. Systemax sells private-label and brand-name industrial equipment and supplies. Pl.'s Compl. 4, 17.

As Vice-President of Systemax's Risk Management department, plaintiff reported to Lawrence P. Reinhold, Systemax's Executive Vice-President and Chief Financial Officer. Pl.'s Compl. 3–4, ¶¶ 12, 21. Her duties included: "managing the operations of the department, managing the department budget, creating and following company guidelines, managing staff, establishing goals and objectives for the department, exercising supervisory and decision making authority, and presenting and reporting to the Board of Directors." Pl.'s Compl. 4, ¶ 22. Performance reviews reflect that she performed these duties proficiently, and that she recouped more than twenty million dollars ($20,000,000) from insurance companies on behalf of defendant. Pl.'s Compl. 5, ¶ 23. She has bachelor of arts, bachelor of science, juris doctor, and a master of laws (LLM) degrees. Pl.'s Compl. 5, ¶ 26. At the time of her termination, her base salary was one hundred ninety-one thousand dollars ($191,000). Pl.'s Compl. 5, ¶ 25.

She was paid less than similarly situated male department heads at Systemax, specifically, Ben White, Tom Axmacher, Bob Baker, Curt Rush, and Alan Schaeffer. Pl.'s Compl. 5,9, ¶¶ 24, 58. She also received smaller bonuses, stock options, and car allowances. Pl.'s Compl. 7, ¶ 47.

Ben White, the vice-president of the Audit department, has bachelor of science and master of business administration (MBA) degrees, and earned two hundred and sixty-two thousand a year ($262,000). Pl.'s Compl. 5, ¶ 29. His responsibilities include: "managing the operations of the Audit department, managing the department budget, creating and following company policies and guidelines, managing staff, establishing goals and objectives for the department, exercising supervisory and decision making authority, and presenting and reporting to the Board of Directors." Pl.'s Compl. 5, ¶ 28.

Tom Axmacher, Systemax's vice-president and controller, has bachelor of science and MBA degrees, and earns three hundred eight thousand ($308,000). Pl.'s Compl. 6, ¶ 32–33. His duties included: "managing the operations of the Accounting department, managing the department budget, creating and following company policies and guidelines, managing staff, establishing goals and objectives for the department, exercising supervisory and decision making authority, and presenting and reporting to the Board of Directors." Pl.'s Compl. 6, ¶ 32.

Bob Baker, Systemax's international controller, has bachelor degree, and earned two hundred fifty-five dollars a year ($255, 000). Pl.'s Compl. 6, ¶ 37–38. He manages the company's overseas accounting department, and his duties are otherwise substantially similar to those of Ben White, Tom Axmacher, and plaintiff. Pl.'s Compl. 6, ¶ 36.

3

Curt Rush, Systemax's general counsel, and then deputy general counsel, managed the legal department; his duties were substantially similar to those of Bob Baker, Ben White, Tom Axmacher, and plaintiff. Pl.'s Compl. 6–7, ¶¶ 39–40. He has bachelor of arts and juris doctor degrees, and earns two hundred fifty-one thousand ($251,200) a year. Pl.'s Compl. 7, ¶¶ 41–42.

Alan Schaeffer, the director of facilities, has a bachelor of arts degree, earns two hundred eighty-eight thousand dollars ($288,000) a year, and his duties include: "managing the physical facilities department, managing the department budget, creating and following company policies and guidelines, managing staff, establishing goals and objectives for the department, and exercising supervisory and decision making authority." Pl.'s Compl. 7, ¶¶ 43–46.

Like plaintiff, all five (5) men were the "highest ranking employee and subject matter expert" in their department, had the "same and equal responsibilities," "shared the same and equal common core of tasks," and "exercised equal skill and effort." Pl.'s Compl. 7–8, ¶¶ 48–50. With the exception of Alan Schaeffer, they all, like plaintiff, reported to defendant Reinhold, were evaluated on the same performance grid, were subject to the same monthly reporting deadline grid, were "responsible for managing, implementing, and creating corporate approval guidelines," "reviewing and analyzing public documents" as members of the company disclosure committee, and worked in the same office in Port Washington. Pl.'s Compl. 8, ¶¶ 51–56.

In January 2013, plaintiff sent defendant Reinhold a series of e-mails, in which she complained "that her compensation was not commensurate to [sic] that of her executive peer group who were all males." Pl.'s Compl. 9, ¶ 59. She told Reinhold that she was "frankly disappointed by the numbers and [felt] that [she] should . . . be compensated relative to my peers" and that her "achievement put [her] on par with [her] peer group on the management team

4

and that [her] pay is commensurate." Pl.'s Compl. 9, ¶ 60. She further complained to Reinhold that she was the only vice-president who was not an "executive officer," and that male vice-presidents were allowed to use that title. Pl.'s Compl. 9, ¶ 61.

On March 29, 2013, she complained to defendant Richard Leeds, the Chairman and Chief Executive Officer:

> I have mentioned my concerns, but do not believe they are being adequately addressed. Relative to my peer group as an executive, I would like to be an "Executive Officer" under the SEC and paid similar to my peers in NY—Tom [Axmacher], Ben [White], Curt [Rush], etc. I do not think this is an unrealistic expectation. I was told Heads of Risk Management cannot be "Eos" which actually isn't true. More than the title, I would like my pay to be more comparable.

Pl.'s Compl. 3, 10 ¶¶ 11, 64–65.

On April 9, 2013, plaintiff was demoted and subjected to "strict and specific restrictions regarding her work hours," to which her male counterparts were not subject, including "being directed to use vacation time for medical appointments." Pl.'s Compl. 10, ¶ 66. In June 2013, she was subjected to an internal audit of her business expense report from an April 2013 Risk and Insurance Management Society conference she attended. Pl.'s Compl. 10, ¶ 67. Plaintiff agreed to pay certain expenses, but was nevertheless interrogated, and told to resign. Pl.'s Compl. 11, ¶ 70. When she refused, she was placed on administrative leave on June 21, 2013. Pl.'s Compl. 11, ¶ 71.

On June 24, 2013, she complained to Systemax's human resource department that its actions were "retaliatory in nature." Pl.'s Compl. 11, ¶ 72. On June 26, 2013, she was terminated. Pl.'s Compl. 11, ¶ 73.

## II. DISMISSAL MOTION

### A. Rule 12(b)(6)

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) (internal quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Id.* at 679. The court is limited "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). "Dismissal is appropriate when 'it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law.'" *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SB*, 763 F.3d 198, 208–09 (2d Cir. 2014) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

### B. Equal Pay Act

Defendants argue that plaintiff's allegations of pay discrimination do not withstand the "exacting inquiry" required by *E.E.O.C. v. Port Authority of New York & New Jersey*, 768 F.3d 247, 255 (2d Cir. 2014), because the complaint fails to plead facts "detailing the duties and responsibilities of any male employees other than generic management responsibilities. Defendants' Brief (Defs.' Br.) 10–11. They assert that "all of the executives identified had distinctly different job skills and responsibilities," and that "[i]t is beyond argument that the job of Risk Manager is vastly different than the job of the Auditor, Controller, Overseas Controller, General Counsel and Director of Facilities," and argue therefore, that plaintiff did not perform "equal work" as required by the statute. Defs.' Br. 1, 5.

The federal Equal Pay Act, 29 U.S.C. § 206(d)(1) prohibits employers from discriminating "between employees on the basis of sex" by paying different wages for "equal work on jobs the performance of which requires equal skill, effort, and responsibility[.]" Unlike Title VII, the Equal Pay Act is a strict liability statute, and a plaintiff need not prove discriminatory intent. *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999). The Second Circuit has explained that the "equal work inquiry does not demand evidence that a plaintiff's job is 'identical' to a higher-paid position," but that the two positions are "substantially equal." *Port Auth. of N.Y. & N.J.*, 768 F.3d at 255 (citing *Lavin–McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001)). To satisfy this standard, a plaintiff may demonstrate that the two jobs share common duties or content, and do not simply overlap in titles or classifications." *Id.* (citations omitted); *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 570 (S.D.N.Y. 2012) *aff'd*, 526 F. App'x 124 (2d Cir. 2013) ("Claims for violations of the Equal Pay Act and the New York State Equal Pay Act may be evaluated under the same standard.") (citing *Rose v. Goldman, Sachs, & Co., Inc.*, 163 F. Supp. 2d 238, 243 (S.D.N.Y.2001)).

To state a claim under the Equal Pay Act, an employee must allege: "[(1)] the employer pays different wages to employees of the opposite sex; [(2)] the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and [(3)] the jobs are performed under similar working conditions." *Port Auth. of N.Y. & N.J.*, 768 F.3d at 254–55 (citing *Belfi*, 191 F.3d at 135) (internal quotation marks omitted). However, to survive a motion to dismiss, "a discrimination complaint need not allege facts establishing each element of a *prima facie* case of discrimination to survive a motion to dismiss, . . . it must at a minimum assert nonconclusory

factual matter sufficient to" satisfy the *Twombly–Iqbal* plausibility standard. *Id.* (citations omitted).

Plaintiff's complaint contains specific, nonconclusory allegations that she was paid less than the other five (5) male department heads at Systemax's Port Washington headquarters, her male comparators. Pl.'s Compl. 5–7, ¶¶ 25, 29, 33, 37, 41, 45. She has also pleaded numerous similarities between her job content and theirs, which, accepted as true, support a reasonable inference that her work is substantially equal to one (1) or more of her five (5) male comparators. *Port Auth. of N.Y. & N.J.*, 768 F.3d at 256 ("At the pleading stage, then, a plausible EPA claim must include 'sufficient factual matter, accepted as true' to permit 'the reasonable inference' that the relevant employees' job content was 'substantially equal.'") (quoting *Iqbal*, 556 U.S. at 678).

The cases cited by defendants illustrate the fact-specific nature of Equal Pay Act claims, and the general impropriety of dismissing them at the pleadings stage. *See Moccio*, 889 F. Supp. 2d at 568 (affirming summary judgment granted "after extensive documentary and testimonial discovery"); *cf. Suzuki v. State Univ. of New York Coll. at Old Westbury*, No. 08-CV-4569 TCP, 2013 WL 2898135, at *4 (E.D.N.Y. June 13, 2013) (dismissing Equal Pay Act claims where complaint contained only single conclusory allegation that defendant paid plaintiff "and other female professors less wages than they paid to male employees although she performed equal, or superior, work and had equal or better qualifications and experience"). *See also Port Auth. of N.Y. & N.J.*, 768 F.3d at 256 ("To be sure, the bulk of these cases concerned whether the plaintiffs had proven their EPA claims following summary judgment or trial, not whether the plaintiffs had adequately pleaded their claims.").

Plaintiff has alleged specific facts to support her claims of unequal pay and that her job content encompasses the "same 'common core' of tasks" as that of her male comparators. *Port Auth. of N.Y. & N.J.*, 768 F.3d at 255 (quoting EEOC Compliance Manual § 10–IV(E)(2) (2000)). And while defendants assert differences between her job responsibilities, and those of her male comparators, this is a factual question that the Court cannot resolve at the pleadings stage. Defendants' motion is denied as to plaintiff's federal and New York state Equal Pay Act claims.

C. Retaliation

Defendants also move for dismissal of plaintiff's retaliation claims, arguing that her claims lacked sufficient clarity to provide them notice that plaintiff was invoking her rights under the Equal Pay Act. Defs.' Br. 15. Specifically, defendants fault plaintiff for her failure to inform defendants Leeds and Reinhold that "she was being paid less than other members of the Executive Management Team who performed substantially equal work, requiring substantially equal skill, effort, and responsibility as the job she performed on account of her gender," and for failing to list "her male comparators' specific job functions and responsibilities." Defs.' Br. 15.

However, the Equal Pay Act's anti-retaliation provision, 29 U.S.C. § 215(a)(3), requires only that a written and oral complaint be made with a "degree of formality" and that its content and context provide "fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of [the employer's] business concerns." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, _, 131 S. Ct. 1325, 1334 (2011). Intracompany complaints must be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for

their protection." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015) (quoting *Kasten*, 563 U.S. at _, 131 S. Ct. at 1335). Thus, plaintiff was not required to recite the elements of a *prima facie* Equal Pay Act claim in her complaints to her superiors, but only to give notice that she was asserting federal statutory rights.

Plaintiff complained to her immediate superior, defendant Reinhold, and to the company CEO, defendant Leeds, via e-mail, stating that her pay should reflect her achievement, and mirror that of her male colleagues; she also complained to human resources of retaliation. Pl.'s Compl. 3, 9, 10 ¶¶ 11, 59–61, 64–65, 72. As she was the only female vice-president at Systemax's Port Washington office, her request for pay parity with her male counterparts, and complaint of retaliation, were not insufficient as a matter of law to place defendants on notice that plaintiff was asserting her legal rights under federal law.

### III. MOTION TO STRIKE/CONSOLIDATION

During the pendency of defendants' dismissal motion, plaintiff received a "right-to-sue" letter from the Equal Employment Opportunity Commission (EEOC), and subsequently filed a second amended complaint to add claims for pregnancy discrimination and sexual harassment under New York Human Rights Law and Title VII. Second Amended Complaint 1, ¶ 7, [Docket Entry No. 25]. She also filed a separate complaint under Docket No. 15-cv-5596, which contained identical claims as those found in her second amended complaint, except without pay discrimination claims. Defendants moved before Magistrate Judge Lindsay to strike plaintiff's second amended complaint for failure to obtain their consent or leave of court, as required by Rule 15(a)(2). [Docket No. 26]. Plaintiff opposed the motion, and moved for consolidation of

the two cases. [Docket No. 27]. Magistrate Judge Lindsay redirected both applications to this Court by order dated September 30, 2015. [Docket No. 28].

Rule 1 of the Federal Rules of Civil Procedure (Rules) require the Court to construe the Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Rule 15(a) allows a plaintiff to amend her complaint once as a matter of course, and thereafter, only with leave of court or with her adversary's written consent. It further provides that "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). "[T]his mandate is to be heeded" especially "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962) (explaining that court abuses its discretion by refusing to allow amendment to a complaint without justification). Moreover, the Court should consider the same factors when deciding consolidation motions. *See Triangle Indus., Inc. v. Kennecott Copper Corp.*, 402 F. Supp. 210, 212 (S.D.N.Y. 1975) (allowing plaintiffs in five separate actions with substantially similar claims to amend complaint to proceed in single action).

At the time of plaintiff's first action, defendants were aware that plaintiff had a complaint pending before the EEOC, and plaintiff indicated at a May 11, 2015, conference that she would bring those claims before this Court once she received her "right-to-sue" letter. Defendants do not and could not allege prejudice, undue delay, bad faith, or dilatory motive by plaintiff in filing her second amended complaint, which included those claims. Moreover, the additional claims in plaintiff's second amended complaint are identical to the claims in her later-filed case, No. 15-cv-5596, and all of her claims derive from the same factual basis. Accordingly, judicial

economy is best served by hearing all of claims as part of a single consolidated proceeding, No. 15-cv-5596, with leave to amend her complaint in that action to add her pay discrimination claims under the federal and New York state Equal Pay Acts.

IV.

Finally, defendants moved on October 7, 2015, for additional time in which to respond to plaintiff's second amended complaint and for a conference to discuss both cases. [Docket No. 29]. Given the Court's disposition of the foregoing motions, and the fact that a conference is already scheduled for October 29, 2015, this application is denied as moot.

V. CONCLUSION

For the foregoing reasons, defendants' dismissal motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied. Defendants' motion to strike plaintiff's second amended complaint is denied. Plaintiff's motion to consolidate is granted. Defendants' motion dated October 7, 2015 motion is denied as moot. The Clerk is directed to consolidate No. 14-cv-7509 and No. 15-cv-5596 under No. 15-cv-5596, and to docket a copy of this order under both dockets.

**SO ORDERED.**

s/ Sandra J. Feuerstein
Sandra J. Feuerstein
United States District Judge

Dated: October 26, 2015
　　　　Central Islip, New York