**FELICELLO**

Michael James Maloney*
Partner

Felicello Law P.C.
1140 Avenue of the Americas
9th Floor
New York, NY 10036

Tel. +1 (646) 564-3510
mmaloney@felicellolaw.com

VIA ECF                    October 13, 2020

Hon. Arlene R. Lindsay, U.S.M.J.
United States District Court, EDNY
814 Federal Plaza
Central Islip, New York 11722-4451

Re:   *Lenzi v. Systemax, Inc., et al.*, Case No. 2:14-cv-07509-SJF-ARL

Dear Judge Lindsay:

This firm represents Plaintiff Danielle Lenzi n/k/a Danielle Markou ("Plaintiff") in the above-referenced action. Pursuant to Rule 2(A)(1) of Your Honor's Individual Practices, and Local Rule 37.3, Plaintiff respectfully submits this letter in opposition to the motion of Defendants, dated October 9, 2020 (ECF Dkt. No. 85, the "Motion"), for an order excluding the rebuttal report of Chad L. Staller, dated September 30, 2020.

**A.   Background**

As set forth more fully in Plaintiff's letter motion dated June 19, 2020, Defendants served an expert report by Mr. Alan A. Nadel ten days before the original close of discovery on November 4, 2016. In his report, Mr. Nadel noted Plaintiff's title at Systemax, Inc. ("Systemax") – Vice President of Risk Management – and compared Plaintiff's compensation at Systemax to benchmark data for executives with the same title at *different* companies. Mr. Nadel found that Plaintiff's salary, although lower than the benchmark data, was within 10% of the mean compensation of executives with the same title at different companies. Based on this comparison, Mr. Nadel concluded that Plaintiff's compensation was "reasonable and competitive."[1]

Shortly after service of Mr. Nadel's report, counsel for the parties had agreed to permit Plaintiff to depose Mr. Nadel after resolution of a motion by Defendants for summary judgment. Although the Court granted Defendants' summary judgment motion, the Second Circuit Court of Appeals reversed in a decision dated December 6, 2019. In the decision, Circuit Judge Pooler found that "Markou has made a sufficient prima facie showing of discriminatory intent."[2] Judge Pooler's finding was based on compensation figures showing that "Systemax paid Markou at a rate that was below market for her position. At the same time, it paid nearly all of Markou's male executive peers above market rate for their respective positions."[3] Thus, the Second Circuit found a prima facie showing based on a comparison of Markou's compensation *as compared to her male executive peers at Systemax*.

By Order dated July 2, 2020, the Court granted Plaintiff's request to reopen discovery for the limited purpose of deposing Mr. Nadel and submitting a rebuttal expert report. (ECF Dkt. No.

---

[1] Nadel Report, at p.14. A true and complete copy of Mr. Nadel's report is annexed hereto.
[2] Second Circuit Decision, dated December 6, 2019 (ECF Dkt. No. 69), at p.26. A true and correct copy of the decision is annexed hereto.
[3] *Id*.

*Admitted to practice law in New York

80, the "Order"). Plaintiff deposed Mr. Nadel on September 2, 2020.[4] At his deposition, Mr. Nadel described his typical approach to these types of expert engagements, including the economic analysis of a party's damages when he finds an actionable "differential" between what that party should have been paid and what was actually received.[5] Thus, a conclusion that there was no basis for damages is necessarily a conclusion that the party's damages is zero.

With respect to Ms. Markou, Mr. Nadel testified that he had not quantified Ms. Markou's damages because, because, in his view, her compensation as compared to that of executives *at other companies* was "reasonable."[6] Mr. Nadel admitted that he was specifically asked to conduct only a comparison of Ms. Markou's compensation to executives *outside* of Systemax.[7] When shown the Second Circuit decision, Mr. Nadel acknowledged that he had not performed a comparison similar to that performed by the Second Circuit, which compared Ms. Markou's compensation to her male executive peers and found to constitute a prima facie showing of discriminatory intent ("Q. Did you compare plaintiff's compensation to the compensation of the comparators? A. Not directly, no").[8]

Critically, Mr. Nadel agreed that the compensation figures on which the Second Circuit relied in finding a prima facie showing of discriminatory intent largely conformed with the compensation data set forth in Mr. Nadel's own report ("Q. To go back to your report, is it fair to say that we see a similar result in terms of whether the actual salary paid is above or below the median on pages 51, 53 and 54 of your report? A. 51 compared to 53 and 54. Yes, exactly. I agree").[9] Thus, had Mr. Nadel performed the correct comparison he would have reached the same conclusion as the Second Circuit and Mr. Staller, *i.e.*, that Ms. Markou was underpaid as compared to her male executive peers at Systemax. And, as he had done in prior matters, upon finding a differential adverse to Ms. Markou, Mr. Nadel would have proceeded to perform an economic analysis.[10] Mr. Nadel did not perform this analysis only because he was instructed to perform an incorrect comparison that led to an incorrect result.[11]

On September 30, 2020, Plaintiff served the rebuttal report of Chad Staller (the "Staller Report").[12] In the Staller Report, Mr. Staller identified the fundamental flaw in Mr. Nadel's report and opinions, *i.e.*, the failure to compare Ms. Markou's compensation to her male executive peers within Systemax. Upon identifying this flaw, Mr. Staller concluded (as the Second Circuit had also concluded) that there was a basis for damages (*i.e.*, an adverse differential in pay) and performed an economic analysis to quantify those damages. Mr. Staller's performance of an economic analysis upon finding an economic differential in compensation is merley standard practice.[13]

### B. The Applicable Legal Standard

---

[4] A true and complete copy of the transcript of the deposition of Mr. Nadel is annexed hereto.
[5] Tr. at p.138:4 to 138:13; *see, e.g.*, p.38:13 to 40:13 ("Q. Are you speaking about a differential? A. Essentially, yes.").
[6] Tr. at p.142:19.
[7] Tr. at p.100:17 to 100:25.
[8] Tr. at p.102:18 to 102:21.
[9] Tr. at p.132:22 to 135:11.
[10] *See* Tr. at p.39:13 to 40:9.
[11] Tr. at p.100:17 to 100:25.
[12] A true and correct copy of the Staller Report is annexed hereto.
[13] Tr. at p.

Hon. Arlene R. Lindsay, U.S.M.J.
August 15, 2020
Page 3 of 3

"Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party." *S.W. v. City of New York*, 2011 U.S. Dist. LEXIS 80833, 2011 WL 3038776, at *2 (E.D.N.Y. July 25, 2011) (citation and internal quotation marks omitted). "The function of rebuttal evidence is to explain or rebut evidence offered by the other party." *United States v. Casamento*, 887 F.2d 1141, 1172 (2d Cir. 1989). "The scope of a rebuttal is limited to the 'same subject matter' encompassed in the opposing party's expert report, Fed. R. Civ. P. 26(a)(2)(D)(ii), but district courts have been 'reluctant to narrowly construe the phrase 'same subject matter' beyond its plain language.'" *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2013 U.S. Dist. LEXIS 7590, at *19-20 (D. Vt. Jan. 18, 2013) (quoting *T.C. Sys. Inc., v. Town of Colonie*, New York, 213 F. Supp. 2d 171, 180 (N.D.N.Y. 2002)). "It is also acceptable for an expert to use new methodologies in a rebuttal 'for the purpose of rebutting or critiquing the opinions of Defendants' expert witness[.]'" *Id.* (quoting *Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 326 (S.D.N.Y. 2009)).

### C. The Motion Should be Denied

Defendants' Motion should be denied for two basic reasons. First, the Staller Report necessarily relates to the "same subject matter" of Mr. Nadel's report because Mr. Staller critiques Mr. Nadel's failure to compare Ms. Markou's compensation to the compensation of her male executive peers within Systemax. As demonstrated by the Second Circuit's decision, Mr. Staller's critique of this failure by Mr. Nadel has merit.

Second, the economic analysis performed by Mr. Staller to quantify Ms. Markou's damages also addresses "the same subject matter" because, as revealed by Mr. Nadel's own testimony, the quantification of damages always flows from the initial conclusion as to whether there exists a *basis* for damages – *i.e.*, whether there is an actionable differential in pay. If Defendants' counsel had permitted Mr. Nadel to perform the correct comparison, he would have found the same differential in pay found by the Second Circuit and proceeded to conduct an analysis of the quantum of damages.[14] It should be noted that Mr. Nadel's report was included in the record before the Second Circuit and, therefore, was rejected by that court.

Accordingly, Plaintiff respectfully requests that the Court enter an Order denying the Motion in its entirety, and granting such other and further relief as the Court deems just and equitable. In the alternative, the Court should preclude Mr. Nadel's report and testimony, pursuant to Fed. R. Evid. 702 and 703, on the grounds that Mr. Nadel's opinions are based on incorrect principles and methods that were rejected by the Second Circuit.[15]

Respectfully submitted,

*/s/ Michael James Maloney*

Michael James Maloney

cc:   All counsel of record (via ECF).

---

[14] *See* Tr. at p.39:13 to 40:9.
[15] *See generally Sherman v. Bear Stearns Cos. (In re Bear Stearns Cos., Sec., Derivative, & ERISA Litig.)*, No. 08 MDL 1963 (RWS), 2016 U.S. Dist. LEXIS 97784, at *20-21 (S.D.N.Y. July 5, 2016) (excluding expert report based on theory not accepted by Circuit Courts of Appeal).